**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SWN PRODUCTION COMPANY, LLC,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 22-cv-91** |
| **v.** | : | **(JUDGE MANNION)** |
| **BLUE BECK LTD.,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Presently before the court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff SWN Production Company, LLC and Defendant Blue Beck, Ltd., parties to an oil and gas lease on land in Susquehanna County, have experienced certain disputes regarding their agreement. Plaintiff brought this suit seeking declaratory relief with respect to these disputes. (Doc. 14). Defendant has moved to dismiss. (Doc. 23).

## I.     Background[1]

Plaintiff, a Delaware company with its principal place of business in Texas, is an oil and gas exploration company. (Doc. 14 ¶¶7, 23). Defendant

---

[1] In considering a motion to dismiss, the court considers only the facts alleged in the complaint, exhibits attached to the complaint, and matters of public record. *Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016).

is a New York corporation with its principal place of business in New York. (Id. ¶20). Defendant entered as lessor an oil and gas lease (the "Lease") with Fortuna Energy Inc., the lessee, in September 2009. (Doc. 14-1). Fortuna assigned the lease to Plaintiff in 2012; therefore, Plaintiff is now the lessee. (Doc. 14 ¶¶15, 30).

### A.) The Lease

The Lease covers land in Susquehanna County, Pennsylvania, and is governed by Pennsylvania law. (Doc. 14 ¶34; Doc. 14-1 §27(e)). "[I]n all circumstances," the Lease is to be "construed against invalidation, termination, or forfeiture." (Doc. 14-1 §27(b)). A failure by Plaintiff to make any royalty payments due under the Lease constitutes an event of default. (Id. §26(a)). After receiving written disclosure of a failure to make royalty payments, Plaintiff has 30 days within which to cure, and may be afforded an additional 60 days if it has commenced the cure within 30 days and continued to diligently cure. (Id. §26(b)). If Plaintiff fails to cure an event of default within the time afforded, Defendant has the right to terminate the Lease after ten days written notice to Plaintiff. (Id. §26(c)). But termination would not take effect if Plaintiff cures the event of default within those ten days. (Id.) The Lease also establishes a procedure under which the parties must attempt in good faith to resolve any disputes. (Id. §27(k)).

**B.) Royalty Payments**

The Lease provides for the payment of royalties from Plaintiff to Defendant of twenty percent of the sales price of all oil and gas produced.[2] (Doc. 14-1 §6 & pg. 14). Plaintiff is required to make royalty payments within 90 days following the month of production. (Id. §6). Defendant has the right to audit Plaintiff's books, records, and accounts annually to verify the accuracy of Plaintiff's statements and check the amount owed to Defendant. (Id. §27(c)).

**C.) Dispute**

Pursuant to the Lease's dispute resolution provision, Defendant sent a Notice of Dispute letter on October 5, 2021 asserting that Plaintiff had failed to make royalty payments on four wells and a compression station. (Doc. 14 §66). Defendant sent an amended version of this letter sixteen days later. (Id. §69). The parties agreed to meet to discuss these issues. (Id. §70). Before this meeting, however, Defendant sent Plaintiff a Notice of Event Default, again citing a failure to make royalty payments. (Doc. 14-3). The Notice generally asserts that "Lessee has failed to pay all Royalties due to

---

[2] The Lease provides the method for determining the sales price of oil and gas and measuring the volume and/or heating value of oil and gas. (Doc. 14-1 pg. 14).

Lessor in accordance with" various provisions of the Lease; it does not state what amount is owed. (Id.).

The parties' business representatives met as planned, but Defendant did not specify the amount owed. (Doc. 14 §§75–76). Based on its own review, Plaintiff determined that it had made errors in calculating the royalty payment for three wells, but had correctly made payments on the other 16 wells. (Id. 14 §79–80). Plaintiff remedied these calculation errors and issued a check to Defendant for the deficiency. (Id. §81–82). It responded to Defendant's Notice with a letter describing its review of the payments and its attempt to cure. (Doc. 14-4). Defendant continued to assert that Plaintiff had failed to make royalty payments. (Doc. 14-5). Plaintiff requested that Defendant inform it of the amounts believed due, and Defendant responded that Plaintiff already possessed the information required to cure. (Docs. 14-7, 14-8).

The parties entered into a tolling agreement effective December 15, 2021, in which they agreed to toll both the 30-day period for curing any alleged events of default and the statute of limitations applicable to any claims either party may have against the other. (Doc. 14-6). The tolling agreement expired on January 15, 2022. (Id.; Doc. 14 ¶122).

The amended complaint avers that there exist several "dueling interpretations" of the Lease between the parties, such that "[a] declaration by this court as to the correct interpretation of the Lease will assist the parties." (Doc. 14 ¶134). First, Plaintiff disputes that the events of default identified in Defendant's Notice of Event Default exist or have not been cured. Second, Plaintiff interprets the lease as prohibiting Defendant from asserting an event of default until after the 60-day dispute resolution time frame provided by §27(k) of the Lease. (Id. ¶¶129–30). Third, according to Plaintiff, Defendant interprets the Lease as permitting Defendant to terminate any time it believes Plaintiff has failed to cure an event of default, while Plaintiff reads it as allowing termination only if the parties agree that an event of default has occurred or if there has been a final judicial declaration regarding one. (Id. ¶¶135–37). Finally, Plaintiff "interprets the Lease as requiring sufficient Notice of the amount of alleged Royalty underpayment" to allow Plaintiff to cure. (Id. ¶155).

### D.)  Relief Requested

Plaintiff requests relief in the form of a declaration that:

> (i) none of the purported Events of default exist or have not been cured; and (ii) the Lease's Section 26(b) & (c) cure period (30 +10 days) for an Event of Default requires disclosure of sufficient detail, including the alleged amount of underpayment, that would allow SWN Production the opportunity [to] cure; (iii) once the Lessor engaged in the Dispute Resolution process under the

Lease, it was required to allow the 60-day period for resolution of disputes to run before it could send a Notice of an Event of Default; (iv) there is no "occurrence" of an "Event of Default" that would allow for forfeiture of the Lease until (a) the Lessor and Lessee agree that an Event of Default has occurred or (b) there has been a final judicial determination that an Event of Default has occurred; and (v) the Lease's cure period does not begin to run until after the "occurrence" of an "Event of Default" has been (a) agreed to by the Lessor and Lessee or (b) determined to exist by a final judicial order.

(Doc. 14 at 37–38).

## II.   Legal Standard

Defendant moves to dismiss Plaintiff's amended complaint under Federal Rules of Civil Procedure 12(b)(1), (6), and (7). (Doc. 23 at 2).

### A. Rule 12(b)(1)

Rule 12(b)(1) provides for the dismissal of a complaint for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion can be a facial or factual attack on subject-matter jurisdiction. *Schuchardt v. President*, 839 F.3d 336, 343 (3d Cir. 2016). For a facial attack, the court reviews only "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (quoting *Gould Elecs. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). "If, however, the defendant contests the pleaded jurisdictional facts, 'the court must permit the plaintiff to respond with evidence supporting jurisdiction.'" *Id.* In any case, "[a] federal court's

obligation to assure itself that it has subject-matter jurisdiction over a claim is antecedent to its power to reach the merits of that claim." Finkelman v. Nat'l Football League, 810 F.3d 187, 193 (3d Cir. 2016).

### B. Rule 12(b)(6)

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### C. Rule 12(b)(7)

Rule 12(b)(7) allows for dismissal of a complaint for failure to join a party under Rule 19. Rule 19 requires the joinder of parties "subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that persons claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an

- 7 -

existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

## III.   Discussion

The court has jurisdiction over this matter under 28 U.S.C. §1332. The Declaratory Judgment Act allows a federal court to provide the kind of remedy Plaintiff seeks; it states:

In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

Yet this allowance does not expand federal courts' subject-matter jurisdiction. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1153 (3d Cir. 1995) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). The Act's application only to "controvers[ies]," taken together with Article III's limited grant of judicial power, has been explained this way:

The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to

- 8 -

fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Cas. Co. v. Pac. Coal & Oil. Co.*, 312 U.S. 270, 273 (1941).

### A. Justiciability

The federal judicial power extends only to "Cases" and "Controversies." U.S. Const. art. III, §2. This constitutional limitation on subject-matter jurisdiction is "essential to our system of separated powers." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009). "Courts enforce the case-or-controversy requirement through the several justiciability doctrines," which "include standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." *Id.*

"Article III denies federal courts the power to 'decide questions that cannot affect the rights of litigants in the case before them,' and confines them to resolving 'real and substantial controversies admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). "To satisfy Article III's case or controversy

requirement, an action must present (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution." *Rhone-Poulenc Surfactants & Specialists, L.P. v. C.I.R.*, 249 F.3d 175, 182 (3d Cir. 2001) (quoting *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1153 (3d Cir. 1995)).

Defendant contends that "there is no justiciable case or controversy" because Plaintiff does not allege that Defendant has or has stated that it intends to issue a Notice of Termination of the Lease. (Doc. 24 at 10). Plaintiff in opposition posits that "if a dispute is ripe, it also satisfies the test for justiciability," and so proceeds to argue that the dispute is ripe. (Doc. 25 at 7–8). In reply, Defendant does not refute that proposition, but further asserts that Plaintiff "seeks a classic advisory opinion." (Doc. 26, at 1).

The general justiciability argument advanced in Defendant's brief does seem to be that Plaintiff has brought this action too soon—essentially, that the case is unripe. *See Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) ("At its core, ripeness works to determine whether a party has brought an action prematurely."). As discussed below, the three-part test for ripeness incorporates the prohibition on advisory opinions. Defendant

further contends that its own "vague" (to use Plaintiff's term) claims "do not present the court with a developed or sharpened dispute." (Doc. 26, at 2). Whether the dispute is sufficiently developed or sharpened to allow judicial disposition is also subsumed by ripeness. *See Plains*, 866 F.3d at 539 ("Various concerns underpin [ripeness], including … whether the facts of the case are 'sufficiently developed.'"). Accordingly, the parties' arguments are appropriately discussed as concerning ripeness, which is Defendant's next argument.

### B. Ripeness

Federal subject-matter jurisdiction "extends only to claims that are ripe for resolution." *Wayne Land & Min. Grp. v. Del. River Basin Comm'n*, 894 F.3d 509, 522 (3d Cir. 2018). "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Id.* "[A] claim is ripe for review if it is fit for judicial decision and withholding court consideration of the issue would constitute a hardship to the parties." *Id.*

Although "the parameters of 'ripeness' are difficult to define within the context of declaratory judgment actions," the Third Circuit has developed a

three-factor method of analysis.[3] *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995) (citing *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.3d 643, 646 (3d Cir. 1990)). This analysis examines (1) "the 'adversity of the interest' between the parties to the action," (2) "the 'conclusiveness' of the declaratory judgment," and (3) "'the practical help, or utility' of the declaratory judgment." *Id.* The action is ripe if all three elements are present. *Id.*

---

[3] The court disagrees with Defendant's assertion that this case does not qualify for the *Step-Saver* test because it is a not First Amendment "free speech" case involving a pre-enforcement challenge. *Step-Saver* itself was not a First Amendment case, nor were other cases applying its test. 912 F.3d at 646 (declaratory judgment suit seeking declaration that the defendants were responsible for any liability imposed on the plaintiff from customer suits); *see also Travelers Ins.*, 72 F.3d at 1152 (declaratory judgment action seeking determination of whether insurance company was obligated to pay for certain care services under Pennsylvania law); *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs*, 580 F.3d 185, 187 (3d Cir. 2009) (seeking determination whether a union agreement was unenforceable as violative of public policy); *Am. States Ins. Co. v. Component Techs., Inc.*, 420 F. Supp. 2d 373, 374 (M.D. Pa. 2005) (seeking clarification of an insurer's duties to defend and indemnify insured); *AXIS Ins. Co. v. PNC Fin. Servs. Grp.*, 135 F. Supp. 3d 321, 325 ("The Third Circuit's test for the ripeness in declaratory judgment actions comes from *Step-Saver*."). *Peachlum v. City of York*, 333 F.3d 429, 434 (3d Cir. 2003), relied on by Defendant for this proposition, did say that "[a] First Amendment claim, particularly a facial challenge, is subject to a relaxed ripeness standard." *Peachlum* did not say that the *Step-Saver* test was that relaxed standard. *Id.* It also observed that the *Step-Saver* test "is tailored to address *pre-enforcement* actions," as opposed to post-enforcement actions, but it did not hold that the test is limited to pre-enforcement actions challenging the validity of a statute. *Id.* at 435.

For this facial attack on subject-matter jurisdiction, the court considers the facts alleged in the amended complaint and attached documents in the light most favorable to Plaintiff. *Schuchardt*, 839 F.3d at 343.

### a.) Adversity of Interests

Though a declaratory judgment action plaintiff "need not suffer a *completed* harm to establish adversity of interests," it "must demonstrate that the probability of the future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'r*, 580 F.3d 185, 190 (3d Cir. 2009). "[A] potential harm that is 'contingent' on a future event occurring will likely not satisfy this prong of the ripeness test." *Id.* Thus, in *Step-Saver*, there was no adversity of interest because the plaintiff sought a judgment that the defendants were responsible for any liability found in customer suits pending against the plaintiff—so its harm was contingent on the result of those suits. 912 F.2d at 647–48.

Plaintiff here has identified the harm it seeks to avoid: termination of the Lease. (Doc. 14 ¶183). It acknowledges that this has not happened yet, but alleges that Defendant has "indicated a willingness to attempt to terminate the Lease." (Id.). The parties have adverse interests, Plaintiff contends, because they disagree on royalty payments. (Doc. 25, at 11).

- 13 -

But their disagreement alone does create adversity of interest. In *Travelers*, the parties disagreed about payments the plaintiff insurance company had already been making. 72 F.3d at 1155. And in *Pittsburgh Mack*, the disputed withdrawal liability owed to a third-party had already been demanded. 580 F.3d at 188. The parties in *Travelers* and *Pittsburgh Mack* disagreed on who was liable for a certain expense—and that liability had already been incurred. So the plaintiff in each was faced with the harm it sought to avoid: a payment for which it believed it was not liable.  The parties here do not dispute that Plaintiff must pay Defendant royalties under the Lease; they only disagree on whether Plaintiff has done so correctly. Plaintiff is not faced with termination, for Defendant has not attempted to terminate or expressed an intention to do so.

Rather, the potential harm here remains contingent. It requires that Defendant choose to terminate, and that termination take effect after the ten-day cure period. Defendant has only given a notice of default, and termination is not the inevitable result of a notice of default. The parties may yet reach an understanding about the royalty payments, or Defendant may abandon this course. The facts alleged here are simply not enough to demonstrate that the likelihood of harm is sufficiently real and immediate to warrant a declaratory judgment. And at this point, it cannot be said that the

- 14 -

parties' interests are adverse, for they share the goal of profiting on the Lease.

Plaintiff also highlights the reasoning of *Marbaker v. Statoil USA Onshore Properties, Inc.*, 801 Fed. Appx. 56, 60 (3d Cir. 2020), which concluded that the parties' interests "in the meaning of their arbitration clauses became adverse … when they took opposing positions in their ongoing arbitration." The plaintiffs sought a declaration that their agreements with the defendant permitted class arbitration, after they had already started class arbitration and the defendant had asserted that it was not permitted. *Id.* So the plaintiffs there faced the harm of being unable to proceed with class arbitration, a potential harm that was real and immediate because the defendants opposed their actual attempt to arbitrate as a class. Plaintiff here, by contrast, has not come up against a refusal to continue the Lease. Indeed, the Lease contemplates, and provides for, the possibility that the parties might disagree or that a default might need curing. Defendant has merely tried to employ these provisions. It has not taken the additional step of attempting to terminate, nor has it demonstrated a plan to do so.

Typically, more is required indicating that harm is likely. For example, adversity of interests existed in *Heckman v. UPMC Wellsboro*, 2021 WL 2826716, at *11 (M.D. Pa. 2021), where a declaration was sought regarding

the enforceability of an employment agreement's non-compete covenant, because the defendant hospital, which formerly employed the plaintiff as a physician, sent a cease-and-desist letter based on the covenant. Similarly, adversity existed in a declaratory judgment action concerning another employment agreement's non-solicitation clause where upon the plaintiff's resignation, the defendant employer sent a letter stating that all legal remedies would be sought in the event the plaintiff violated the provision. *Bradfield v. Heartland Payment Systems, LLC*, 2018 WL 5784998, at *6 (D.N.J. 2018). Unlike these cases, no clear indication has been made here that Defendant intends to attempt termination.

An action for declaratory judgment was justiciable in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), on which Plaintiff also relies, where MedImmune received from Genentech a letter expressing its belief that a MedImmune product was covered by a certain patent and that MedImmune was thus required to pay it royalties. *Id.* at 121. Believing that patent neither enforceable nor infringed by its product, MedImmune paid the demanded royalties under protest and brought an action for declaratory judgment. *Id.* The parties did not dispute that the case would be justiciable had MedImmune refused to make royalty payments, since Genentech did not contradict MedImmune's allegation that the former would enjoin sales if the

latter refused to pay. *Id.* at 128. The Court concluded that the fact that MedImmune's own act, paying the royalties, "eliminate[d] the imminent threat of harm" did not cause the case to be non-justiciable. *Id.* at 128, 137. Unlike *MedImmune*, Plaintiff here has not been forced to make payments under protest. And Defendant does not concede that it plans to terminate. Plaintiff is not faced with a similarly real and immediate choice between termination and making disputed payments.

The other cases cited by Defendant demonstrate only that a dispute over contract interpretation can be the subject of a declaratory judgment action, not that such a dispute by itself creates adversity of interest. In *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980), a live controversy existed where the parties, who had started negotiating the defendant's severance pay, disputed the validity of an employment agreement specifying compensation. There was also adversity in *Expotech Eng'g v. Cardone Indus.*, 2020 WL 1694543, at *7 (E.D. Pa. 2020), where the parties took opposite views on the ownership of a copyright *and* the defendant had filed a lawsuit putting the ownership in dispute the year before. And the parties in *Lehigh Coal & Navigation Co. v. Cent. R.R. of N.J.*, 33 F. Supp. 362, 365 (E.D. Pa. 1940) disagreed about the scope of an arbitration which had already begun; thus, it could not "be questioned that

ultimately" the court would "be required to pass upon this controversy." The feared harm in these cases was more real and immediate than that here. The plaintiff in *Korvettes* had been terminated and was negotiating his severance, the parties in *Lehigh* had begun arbitration, and the previous lawsuit involved in *Expotech* provided a clear indication of the threatened harm. Absent from this case is a concrete event—like termination, arbitration, or litigation—bringing a theoretical harm into reality.

As an example of a case where no adversity of interest existed, *McKenna v. PSS World Med., Inc.*, 2009 WL 2007116, at *1 (W.D. Pa. 2009) involved a declaratory judgment action regarding the validity of restrictive covenants in the plaintiff's employment agreement. The court found that the complaint there did not demonstrate that the probability of harm was real and substantial because the plaintiff had not alleged that he had been offered or had accepted employment with another company, or that the defendant had attempted to enforce the restrictive covenant. Id. Likewise, where plaintiffs challenged a Pennsylvania anti-takeover statute, this element was not satisfied because no takeover had been attempted which would trigger the statute and harm the plaintiffs. *Armstrong World Indus. v. Adams*, 961 F.2d 405, 415 (3d Cir. 1992). Similarly here, there is no factual allegation that

Defendant has attempted to terminate the Lease, only conclusory allegations that it has threatened to.

*Bell Atl. Corp. v. MFS Commc'ns Co.*, 901 F. Supp. 835, 844–49 (D. Del. 1995) is also persuasive. The plaintiff there, alleging that the defendant had threatened private antitrust enforcement action, sought a declaration that it was not acting in violation of antitrust law. *Id*. at 839–40. The court noted that the plaintiff had not presented evidence of an express threat by the defendants, and found that the indirect statements presented did not make the possibility of suit real or immediate. Id. at 844–45. It rejected the plaintiff's theories that the case was justiciable because the parties took opposing positions or because there were no contingent facts on which the action would be tried (as it would address the lawfulness only of plaintiff's past conduct). *Id.* at 845–47 ("[T]he simple assertion that the parties disagree on a legal issue does not create adversity of interest or a justiciable controversy."). The court reasoned that "[s]imply because all of the facts that could create liability have occurred does not demonstrate that present harm is flowing from a feared … antitrust suit." *Id.* at 847.[4] Here too, Plaintiff has

---

[4] This reasoning is derived from the Third Circuit's instructions in *Armstrong*, 961 F.2d at 412. Discussing the adversity of interest element, the court explained "a plaintiff need not suffer a completed harm to establish adversity of interest between the parties. In some situations, present harms will flow from the threat of future actions." *Id.* (citations omitted).

not alleged facts indicating a real and immediate threat of termination. And adversity of interest is not created by the parties' disagreement or by the fact that the payments in dispute have already occurred.

For these reasons, the court concludes that the adversity of interest element is not present in this case. Its review of *Step-Saver*'s application in other cases convinces the court that Plaintiff's factual allegations do not demonstrate that the probability of termination is sufficiently real and immediate to warrant declaratory judgment.

### b.) Conclusiveness

The absence of adversity makes this case unripe, but the court also notes that the first declaratory judgment sought here would not be conclusive. Conclusiveness "goes to whether the parties' rights will be definitively decided by a declaratory judgment." *Step-Saver*, 912 F.3d at 649 n.9. This factor "also addresses the extent to which further factual development of the case would facilitate decision, so as to avoid issuing advisory opinions, or whether the question presented is predominantly legal." *NE Hub Partners v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d Cir. 2001).

The first declaration Plaintiff seeks is one that Plaintiff has not defaulted, or failed to cure any default, how Defendant says it has. Such a

declaration would only define the parties' rights as to the payments made so far. It is unlikely to settle going forward the issue of royalty payment calculation. Unlike "predominantly legal questions," which "are generally amenable to a conclusive determination in the preenforcement context," *Plains*, 866 F.3d at 543, the question here is predominantly factual. The parties do not raise a precise question of contract interpretation regarding royalty payments whose answer would conclusively define their rights on this issue.

### c.) Utility

Finally, a declaratory judgment "must be of some practical help to the parties." *Travelers*, 72 F.3d at 1155. This requirement stems from the Declaratory Judgment Act's purpose "to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future." *Id.*

The declarations Plaintiff seeks would have utility by resolving the parties' disagreements regarding existing default and contract interpretation. As the parties navigate this ongoing dispute, such declarations would provide guidance on their rights in relation to an event of default—which is a prerequisite for termination. The declarations would thus be of practical help to the parties.

Based on its analysis under *Step-Saver*, the court concludes that because adversity of interest does not exist, this declaratory judgment action is not ripe.

### C. Exhaustion of Dispute Resolution Provision

Defendant also argues that Plaintiff has not exhausted the dispute resolution procedure set forth in §27(k) of the Lease, which requires a period of 60 days following a notice of dispute before a party can initiate court action. (Docs. 24 at 10; 14-1 §27(k)). Although Defendant styles it as an argument about ripeness, this affirmative defense does not concern subject-matter jurisdiction.[5]

Taking the amended complaint's factual allegations as true, the court concludes that Defendant has not established that this defense warrants dismissal.[6] Defendant notes that the 60-day period ended three days after the filing of Plaintiff's complaint if measured from the October 21, 2021 notice of dispute and accounting for the tolling agreement. (Doc. 24, at 12). Plaintiff

---

[5] "[W]ithin the Third Circuit a court may consider an affirmative defense on a Rule 12(b)(6) motion to dismiss if the bar established by the defense is 'apparent on the face of the complaint.'" *Irish v. Ferguson*, 970 F. Supp. 2d 317, 353 (M.D. Pa. 2013) (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

[6] "In civil cases, the burden of proof rests upon the party who asserts the affirmative of an issue." *Porter Twp. Initiative v. East Stroudsburg Area Sch. Dist.*, 44 A.3d 1201, 1209 (Pa. Super. Ct. 2012).

responds that the period should instead be measured from October 5, 2021, when Defendant sent its first dispute letter. (Doc. 25, at 15). Neither letter is in the record. Taking the Plaintiff's factual allegation regarding the October 5, 2021 letter as true, (Doc. 14 ¶66), the court concludes that this action was brought outside of §27(k)'s 60-day period.

### D. Joinder of Required Parties

Defendant lastly argues that under Rule 19(a) Plaintiff was required to join the other royalty owners being paid a royalty from the wells drilled on the leased premises, because these owners will be harmed if Plaintiff abandons the wells, which Plaintiff alleges Defendant will attempt to require it to do upon termination. (Docs. 24 at 14; 14 ¶¶62, 138). Defendant bolds subsection (i) of Rule 19(a)(1)(B), suggesting that disposition of this declaratory judgment action would impair or impede the other royalty owners' ability to protect their interests. Defendant also relies on *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 409 (3d Cir. 1993), which endorsed the proposition that "joinder of an absent party is compulsory under Rule 19(a)(2)(i) if the federal litigation would have a preclusive effect against the absent party in subsequent state litigation."

Defendant does not explain how the declaratory judgment Plaintiff seeks would have a preclusive effect against any absent parties. The

requested declarations relate only to the Lease between Plaintiff and Defendant, so it is not clear how they would preclude others. There is no allegation that Defendant has entered identical leases with these absent royalty owners.

Defendant also argues that not joining the absent royalty owners would lead to a multiplicity of lawsuits upon termination of the Lease. While lawsuits may result if, as Plaintiff alleges, Defendant attempts to require Plaintiff to plug or abandon the wells, those suits would involve a different dispute than this one, which involves a lease between two parties.

While these absent parties may have interests in the wells, disposition of this action regarding rights under the Lease between Plaintiff and Defendant will not affect these interests. The declarations sought by Plaintiff only pertain to events of default and the resulting right to terminate the Lease, not to the right of Defendant to force abandonment of wells on the leased premises. These third-party rights to receive royalty payments are not at issue in this action, and so the other royalty owners' ability to protect their interests will not be impeded by disposition in their absence. Therefore, Defendant has not shown that Plaintiff has failed to join required parties.

## IV.    CONCLUSION

The court concludes that this declaratory judgment action does not present a case or controversy as required by Article III because it is not ripe. Therefore, it must be dismissed for lack of subject-matter jurisdiction.

For these reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint, (Doc. 23), will be **GRANTED**. Plaintiff's Amended Complaint, (Doc. 14), will be **DISMISSED** without prejudice. An appropriate order will follow.


*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 10, 2023**
22-91-01

- 25 -